W. Winne Cadby, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 49170.    Filed August 11, 1955.

*Charles B. Honikel, Esq.*, for the petitioner.
*James E. Markham, Jr., Esq.*, for the respondent.

#### OPINION.

Opper, *Judge:* What we have before us is an income tax deficiency of $3,912.59 for 1943 resulting from a 1942 transaction. The facts have all been agreed upon and are hereby found accordingly. Petitioner's return was filed with the collector of internal revenue for the fourteenth New York district.

Petitioner's father died prior to April 2, 1942, on which date his will was admitted to probate. It included the following provision:

> I hereby authorize, empower and direct my said executor and trustee to sell to W. Winne Cadby and Charles D. DeFreest the five hundred (500) shares of preferred stock and the two hundred and seventy (270) shares of common stock of Cadby & Son, Inc., now owned by me, upon the payment of Twenty-five thousand dollars ($25,000.00), provided satisfactory proof is given to my said executor and trustee that said persons have purchased from my said wife, Mabel A. Cadby, the sixty (60) shares of preferred stock of said corporation now owned by her and have paid to her the sum of Six thousand dollars ($6,000.00) therefor, and further provided that each of said purchases and payments shall have been made within two years from the date of my death. If said purchases and payments are not made within said period, I leave the sale of all of said certificates of stock owned by me at my death to the uncontrolled discretion of my said executor and trustee.

On July 17, 1942, petitioner sold to DeFreest his rights under that provision for $13,000. The question is what part, if any, of that sum is income to petitioner.

The parties agree that *J. Gordon Mack*, 3 T. C. 390, affd. (C. A. 3) 148 F. 2d 62, certiorari denied 326 U. S. 719, has something to do with the controversy. Respondent insists it is controlling, and fails to meet petitioner's argument that it is plainly distinguishable. We think petitioner is correct although he refers us to no authority covering these facts and we have found none.

In the *Mack* case an option similarly bequeathed to a taxpayer was exercised. On a subsequent sale of the property the taxpayer contended that his basis included both the cash paid for the property and the value of the option at the time of its receipt by inheritance. Our conclusion that only the cash should be considered was founded

principally upon *Helvering* v. *San Joaquin Fruit & Investment Co.*, 297 U. S. 496, upon which respondent likewise relies here.

In the latter case the March 1, 1913, value of an option to purchase was not permitted to be included in the optionee's basis when the property was subsequently sold after an exercise of the option in 1916. It was held that the real property sold was not "acquired" until 1916 and consequently was not owned on March 1, 1913. But the Court commented (at p. 498) :

The option itself was property, and doubtless was valuable. If it had been assignable, and the lessee had sold it at a profit, taxable gain would have resulted from the sale. But the option is admittedly not the same property as the land.

Similarly, in the *Mack* case the Tax Court's opinion (at p. 395) makes it clear that :

What the petitioner sold here was not the option to purchase. That was personal to the petitioner. It could not be transferred. What he did sell was the five shares * * *

The distinction between the sale of an option, and of property acquired by exercising it, is thus clearly apparent from the only authorities said to be in point. And here petitioner did the former. The option was property. It had value. See *Helvering* v. *San Joaquin Fruit & Investment Co.*, *supra*. It acquired a basis by virtue of its transmission by inheritance. See *Bell's Estate* v. *Commissioner*, (C. A. 8) 137 F. 2d 454; *McAllister* v. *Commissioner*, (C. A. 2) 157 F. 2d 235, certiorari denied 330 U. S. 826. And it was sold. We reject the notion that its basis was necessarily zero.

Respondent insists that even if the option could have a basis as a matter of law, petitioner has failed to overcome the factual presumption of a zero basis resulting from the deficiency determination.

The basis of property acquired by inheritance is ordinarily its fair market value at the date of death. *Brewster* v. *Gage*, 280 U. S. 327. This can be established, at least presumptively, by the value adopted for estate tax purposes. In this case petitioner, we think correctly, computes the value of the option by deducting the option price from the value of the stock as shown and apparently accepted in the estate tax return.

The result of this computation is not frustrated by respondent's further contention that the conditions attached to the option were so burdensome as to eliminate its value. The only requirement of any consequence is that the optionee shall purchase the 60 shares of the widow's preferred stock for $6,000. We cannot assume that this portion of the stock had no value, since the preferred stock was reported as worth $100 a share, so that the entire $6,000 was to be given for property of equal value. We see no reason to consider this condition unduly burdensome. The computation of the value of the option would then proceed as follows:

Value of stock per estate tax return:

| | | |
|---|---:|---:|
| 500 shares preferred | $50,000.00 | |
| 270 shares common | 5,243.40 | |
| | | $55,243.40 |
| Widow's preferred stock (60 shares) | | 6,000.00 |
| | | $61,243.40 |
| Less: | | |
| Option price | $25,000.00 | |
| Widow's payment | 6,000.00 | |
| | | 31,000.00 |
| Value of option | | $30,243.40 |
| Petitioner's ½ share | | 15,121.70 |
| Sale price of option | | 13,000.00 |
| Gain on sale | | 0 |

In the absence of countervailing evidence adduced by respondent this seems to us sufficient to carry petitioner's burden of proof that no gain was realized on the sale of the option.

*Decision will be entered for the petitioner.*